OPINION AND ORDER ON RECONSIDERATION

This matter comes before the Court on Appellants’ petition filed on June 17, 2010 for this Court to reconsider, in whole or in part, our opinion affirming the decision of the District Court declaring Navajo Nation Resolution CO-41-09 invalid. On June 18, 2010 the Court issued an Order permitting responses to be filed by July 9, 2010. Amicus Eddie Arthur filed a response on July 9, 2010. Appellees timely requested an enlargement of time to file their response. Their request was granted, and Appellees’ response was filed on July 14, 2010.
Appellants raise four broad points: (1) that the Court should not have found a waiver of sovereign immunity, and that the Court failed to overturn or distinguish Plummer II; (2) that the Court had issued advisory opinions on matters not raised in the district court; (3) asserting that our Opinion creates confusion as to the status of amendments made by the Council since the enactment of CD-68-89 (Title II Amendments), Appellants request that the Court affirmatively state that the Council does have the authority to amend and modify Title I and II and related sections, and further state that our holding that the recitals in Council resolutions have the force of law be limited only to CD-68-89 and the facts of this case; and (4) that the award of attorneys’ fees to Amicus Arthur was improper as Mr. Arthur was not a party to the case. In their response, Ap-pellees assert that Appellants petition is frivolous, mischaracterize the Court’s holdings, raise issues previously disposed of by the Court, and is otherwise without merit. Appellees further request that they be awarded attorneys’ fees for the preparation of their response.
For the reasons discussed below, Appellants’ petition for reconsideration is DENIED. Appellees’ request for attorneys’ fees for the preparation of their response is also DENIED.
However, we clarify our previous holding on the limitations in the authority of the Council to amend and modify Title I and II and related sections, and also clarify the status of amendments made by the Council since the enactment of CD-68-89. We further modify the factors for finding special circumstances in the award of attorneys’ fees to an amicus, or friend of the court.
The facts of this case have been discussed at length in this Court’s original Opinion of May 28, 2010 as corrected on June 2, 2010 (“First Opinion”) and need not be addressed again. This Opinion and Order on Reconsideration shall be referred to as “Second Opinion.”

Standard of Review

Reconsideration is not a device to reliti-gate the same issues already decided or to raise arguments or evidence that could and should have been raised in the original appeal. A Petition for Reconsideration will not lie to relitigate old matters. Insofar as the parties merely repeat arguments previously advanced and reiterate evidence *81 considered in the original appeal, such arguments will be summarily dealt with, in short order.

POINT ONE: Sovereign Immunity

Appellants claim the Court erred when we recognized an implied waiver of sovereign immunity. Appellants’ assertion is incorrect and, furthermore, mischaracter-izes our holding. The Court held that the Sovereign Immunity Act (the Act), as amended, does not contemplate internal non-monetary suits by and between the Navajo Nation. We did not acknowledge a waiver, implied or otherwise, nor did we acknowledge any exception to the Act.
Appellants assert that the Court must find that “inherent” sovereign immunity protects the Navajo Nation from intra-governmental non-monetary suits by and between itself. Appellants cite numerous federal and tribal eases recognizing inherent tribal sovereign immunity. However, all the cases cited address external litigation between tribal governments and outside entities or individuals. None discuss immunity in the context of internal tribal governmental disputes. Therefore, we find no merit in Appellants’ position.
Finally, Appellants argue that the Court failed to overrule or distinguish Plummer v. Brown, 6 Nav. R. 88, 91 (Nav.Sup.Ct.1989) (Plummer II). We have previously explained that Plummer II is not appropriate precedent for the present case, and the matter will not be discussed further.

POINT TWO: CJA-08-10 and Governmental Structure

Appellants claim that CJA-08-10 (The Foundation of the Dine, Dine Law and Dine Government Act of 2009) was not properly before the Court because that resolution has no retroactive application to the present appeal, and therefore our holding as to its validity constituted an advisory opinion. Appellants previously raised this same argument. For purposes of dainty, we repeat that principles of retroactive application of laws have no bearing on the impact of CJA-08-10 on this case. CJA-08-10 would impact on the outcome of this case through its immediate purported restriction on the use of Fundamental Law by the courts of the Navajo Nation in resolving all disputes before it.
Appellants claim that the legitimacy of CJA-08-10 and the governmental structure never came before the Window Rock District Court. Appellants are incorrect. The suit underlying this appeal was filed by and between Navajo Nation entities regarding the propriety of a Council enactment placing the President of the Navajo Nation on administrative leave. See Complaint at 8-9, 50-58. Both the President and Council are included in the definitions of “Navajo Nation” under 1 N.N.C. § 562, therefore this suit necessarily concerns parameters of Legislative and Executive Branch authority. Extended testimony on governmental structure was heard by the District Court (See Transcripts of 12/U/09 hearing, pp. 39-45). Furthermore, all three branches became embroiled in the question of governmental structure by Appellants’ assertion in its briefs that there is no separation of powers doctrine on the Navajo Nation. Appellants’ Response to Appellees’ Supplemental Brief, p. 18. Passage of CJA-08-10 by the Council underscored Appellants’ above position that separation of powers does not exist on the Navajo Nation by purporting to restrict the type of law the courts may use to Council-enacted statutes. By stating that “Navajo common law cannot supply a rule of decision about how to allocate lawmaking power between the Council and the courts,” Appellants emphasized the competing views of the government on the use of Fundamental Law in judicial deci *82 sion-making. Id, p. 17. By asserting that “the Council is the absolute source of governance for the Navajo People,” Appellants necessarily involved the Court in sorting out the source of Navajo Nation governmental responsibility and power.
Appellants challenge the Court’s adoption of a five-part test for issuing clarifying opinions, arguing that there is “no meaningful distinction” between an advisory opinion and clarifying opinion. We disagree. The distinctions between an advisory opinion and clarifying opinion are evident in the test. While advisory opinions have a non-binding nature and are based on hypothetical facts, the clarifying opinion determines the duties, rights, obligations, and status of parties to prevent harm from occurring and the likelihood of imminent and costly suits in order that finality for the parties may be reached. As such, they are binding opinions on the parties. The clarifying opinion may be issued only in connection with a present suit under limited circumstances defined by the five-part test. In adopting this test, the Court acted within the scope of our inherent authority. As we stated in Begay v. Navajo Election Administration, “The powers inherent in court governance are the powers that courts call upon to be able to function institutionally. That is to say, courts use them ... to prescribe rules and conditions for the oversight of those persons who are or become actors in the activities related to the judicial process. They come into being from the necessity of courts to govern themselves.” 7 Nav. R. 139 (Nav.Sup.Ct.1995), citing F. Stumpf, Inherent Powers of the Courts 15 (1994). Additionally, “(o]ne of the major policies of law is that courts should discourage multiple litigation by using their inherent authority to control the progress of cases.” Benalli v. First Nat’l Ins. Co. of America, 7 Nav. R. 329, 339, 1 Am. Tribal Law 498, 510 (Nav.Sup.Ct.1998).
Finally, Appellants assert that the Court failed to satisfy the above test because certain elements of the test were not raised by the parties themselves. We disagree. The test provides that the Court may sua sponte determine the necessity of a clarifying opinion. The test does not require affirmative assertions and proofs on each element by the parties.

POINT THREE: Amendments to Title II

Appellants request that the Court reconsider its views concerning the limitations in the authority of the Council to modify and amend CD-68-89 (Title II Amendments) due to confusion regarding the status of many amendments to Title II that have been made since 1989. Appellants further ask that we consider limiting our holding that recitals have the force of law to CD-68-89.
As we stated in our First Opinion, words are sacred. A leader must always speak the truth and has a responsibility to communicate it to the people, Naat’áann éí t’áá’aaníígóó yaití’ doo t’óó áníida éí bini-inaa éí bidíne’é yil ahídéét’i’go yich\” yálti’ dóó yil ahidiits’a’. When words are said, they must be meant. The People must be able to hold the Navajo Nation Council to the whole of its words, not simply a portion thereof. First Opinion, p. 25-27. The holdings in question have broad application and apply not only to Title II but to all Navajo Nation laws that impact checks and balances, separation of powers, accountability to the People, ac-knowledgement of the People as the source of Navajo Nation governmental authority, conformance between recitals and codified sections of laws, and service of the anti-corruption principle. Therefore, we deny both these requests. However, we *83 will clarify the status of amendments to laws impacting governmental structure since 1989.
In enacting the Title II Amendments, the Tribal Council recognized that checks and balances must exist between the branches of the government. CD-68-89, Whereas Clause 8. In the midst of the crisis of the times, the Council acted to curb its own power and create a structure that would halt a sense of internal difficulties in our government and that would endure as a bulwark against corruption “until the Navajo People decide through the Government Reform Project the form of government they want to be governed by.” Id. To emphasize that the Title II Amendments of 1989 were intended to be left intact until the People’s decision, the Council further repealed and declared “null and void rules, regulations, and laws or parts thereof which are inconsistent with the provisions of Title Two (2), Navajo Tribal Code, as amended herein.” Id., Resolved Clause U- We have held that the Whereas and Resolved Clauses of CD-68-89 operate today as a solemn promise by the Council to the People, intended to bind the hands of future Councils. First Opinion, p. 25. We have stated that the clauses embody the commitment of the Council to a structure they hoped and believed would serve the People effectively until the People themselves might find a path to a better way. Id.
 We have affirmed the power of the people to choose their government by singling out egalitarianism as the fundamental principle of Navajo participatory democracy and explaining its meaning as the ability of the People as a whole to determine the laws by which they will be governed. Id., p. 29-30. Most importantly, we have held that “the power over the structure of the Navajo government ‘is ultimately in the hands of the People and [the Counciljwill look to the People to guide it.’ ” In re Two Initiative Petitions Filed by President Joe Shirley, Jr., 7 Am. Tribal Law 628, 633 (Nav.Sup,Ct.2008). We have elaborated that the power of the people to participate in their democracy and determine their form of government is a reserved, inherent and fundamental right expressed in Title 1 of our Diñé Fundamental Law and the Navajo Bill of Rights. In re Navajo Nation Election, Administration’s Determination of Insufficiency Regarding Two Initiative Petitions Filed by Shirley, 8 Am. Tribal Law 240, 243, n. 2 (Nav.Sup.Ct.2009), This “reserved” right cannot be denied or disparaged except by a vote of the People. Id. Additionally, CD-68-89 provided the statutory foundation for principles of checks and balances, separation of powers, accountability to the People, acknowledgement of the People as the source of Navajo Nation governmental authority, and service of the anti-corruption principle. The Council may not amend any portion of the Navajo Nation Code in a manner that disturbs and undermines the above stated principles. The Council may not change, modify, override or amend provisions in which the People have expressed a decision through vote or other trustworthy and publicly accepted mechanism, such as Chapter resolutions, recorded and written comments provided to the Government Reform Project, and signed petitions. In other words, once the people have spoken, their proposition becomes law unless the people have acquiesced otherwise with full information and understanding.
It is impossible for this Court to comb through the entire Navajo Nation Code to determine which provisions undermine the above stated principles and are, therefore, invalid. For purposes of clarification, we will identify some obvious provisions. As for other provisions, we would leave those *84 to the People, the Commission on Government Development and appropriate governmental entities to fully address.
a. CO-37-07 (Navajo Government Development Act of2007)
A review of the Record of the Navajo Tribal Council (“Record”) from December 14-15, 1989 shows that it was recognized during the drafting of the Title II Amendments that participatory democracy requires a public that is fully informed and educated on governmental matters. It was also recognized that efforts to inform and obtain public input require time and funding through the Navajo government itself. The late Leo Watchman, then coordinator for the now defunct Government Reform Project, reported on comments and feedback received from the public and described the public need for the Council to put up funding and establish a Commission on Government Development with a plan of operations to look at the weaknesses in the tribal government, develop recommendations, obtain informed input from the Navajo public, and educate the people about their government and alternate forms of government. See Record from Dec. 14, 1989 at 1182-84. Mr. Watchman stated that, given the separation of powers of the branches about to be temporarily established, the public questioned the words in the Title II proposed amendments describing the Council as the governing body without the people being given an opportunity to be involved and have a voice in their government. Id, The law firm of Hale and Denetsosie, serving as Legislative Counsel to the Council, stated:
Within the present form of government the proposed amendments intends to impose certain checks and balances upon the powers of the governing body, the Navajo Tribal Council. The Government Reform Project on the other hand, is a project in which the Navajo people will be given an opportunity to determine the nature and form of their government. The reform project will give the people the opportunity to decide whether to move from the present resolution form of government to another form of government, such as a constitutional government or parliamentary government. It is anticipated that the government reform project will not be complete until a decision is made by the Navajo People, which may be any where from two (2) to three (3) years or more. In the meantime, the Navajo Tribal Council must address problems which contributed to the recent government controversy and crisis arising from the Big Boquillas Ranch purchase. That is the overall intent of the amendments to Title 2 of the Navajo Tribal Code.
Id. at 1174.
Of all the entities established by the Title II Amendments, the Commission on Government Development (“Commission”) and the Office of Navajo Government Development (“Office”) are the sole entities established according to the wishes of the People expressed through the coordinator of the Government Reform Project. The object was to facilitate a decision by the People within a reasonable time frame. Therefore, the dissolution of the Commission and changes made to the powers of the Office by enactment of CO-37-07 (Navajo Government Development Act of 2007) on October 17, 2007 cannot stand.
Rather than continue to put forward governmental structural changes piecemeal to public vote, we hold that the Commission and Office must be immediately restored according to the original terms in the Title II Amendments of 1989 in order to renew providing for adequate information and education of the public as to Navajo Nation government and alterna *85 tive government structures, and to finally fulfill their purpose of enabling the People to participate in the development of our Navajo Nation government. They shall be funded at their original funding levels or at sufficient levels to fulfill their duties and responsibilities, whichever is greater. The duties shall be performed within a reasonable time frame to be set by the Commission. Recommendations by the People may be via chapter resolutions, referendum, convention of representatives of the People, or other publicly accepted mechanism to be determined by the Commission after feedback from the People. Commission members serving at the time of the Commission’s dissolution may be re-confirmed without undue formality. Commission members are to be presented for confirmation by the incoming Council.
In our First Opinion, we noted that the People have already taken substantial steps to choose their government through this Commission. First Opinion, p. 27. In October 2002, the Commission met with representatives from each of the 110 chapters in a week-long convention at Red Rock State Park. As a result of the Convention, the People, through the Commission, proposed amendments to local and central governance and election law that they believed vital to governmental reform. Id. The proposed amendments are now eight years old, but remain a testament of the People’s wishes. It would be proper for the Commission to revisit and update the proposed amendments with the People, following which a plan shall be presented for the People to accept or reject those amendments through chapter resolutions, referendum or other publicly accepted means.
We further note that CD-68-89 had provided that the Commission shall have “quasi-independent authority to accomplish the Council’s project of instituting reforms necessary to ensure an accountable and responsible government.” Title II Amendments of 1989, Article 3, Section 970. “Quasi-independent authority” must be fully defined in order to ensure the Commission and Office are accountable to the People, as intended, rather than to any governmental entity. We hereby define “quasi-independent authority” as follows: the Commission and Office are funded by the Council and part of the Navajo Nation government but shall be given considerable independence of operation, free of restrictions; and their members and staff shall be subject to removal only for good cause, such as malfeasance, neglect of duties or office, or incapacity.
b. 2 N.N.C. § 102(A) and (B)
2 N.N.C. § 102(A) relating to changes in the size of the Council was effectively amended by vote of the People on December 15, 2009 via the reduction-in-council initiative. 2 N.N.C. § 102(B) relating to powers reserved to the Council is invalid under principles of egalitarianism, and the reserved, fundamental and inherent right of the People to make laws and determine their form of government as previously elucidated by this Court.
c. 11 N.N.C. § 401(A) and (B)
11 N.N.C. § 401(A) and (B) relating to referendum/initiative matters in which yearly appropriations for a fiscal year budget, laws determined by the Council to be emergencies, use of trust funds, issuance of bonds, acquisition of property, granting of public utility franchises, rate regulations, tax measures and zoning, among others, are exempted from the referendum/initiative process are invalid as they purport to remove matters of intrinsic public concern from public vote.
*86 d. 11 N.N.C. 240(C)
In our First Opinion, we stated that 11 N.N.C. § 240(C) pertaining to placement on administrative leave of certain non-Legislative Branch elected officials by majority vote of the Council “should no longer be used.” First Opinion, p. 44. We hereby modify our statement and hold that 11 N.N.C. § 240(C) shall no longer be used on non-Legislative Branch elected officials for the reasons set forth in our First Opinion. See Id.
[[Image here]]
The Court has explicitly affirmed precedent that “there is a Navajo higher law in fundamental customs and traditions, as well as substantive rights found in the Treaty of 1868, the Navajo Nation Bill of Rights, the Judicial Reform Act of 1985, and the Title Two Amendments of 1989 and they set the boundaries for permissible action by the legislative, executive and judicial branches of the Navajo Nation.” First Opinion, p. 16. We also held that “the Council may not insulate nor exclude any statute, policy or regulation from judicial review.” Id. p. 12. Our holdings make it clear that the Council must comply with these parameters if they wish to address any of mu- organic laws, and their actions are subject to judicial review.

POINT FOUR: Amicus Attorneys Fees

Appellants ask that we reverse our award of attorneys’ fees and costs to Ami-cus Mr. Arthur because Mr. Arthur is not a party, was not required to participate, no hearing was previously held on the matter of fees, and Appellants did not spend $150,000 on counsel as Mr. Arthur contends. We decline to reverse the award of fees to Amicus Mr. Arthur. However, we modify the factors for finding special circumstances as set forth in our First Opinion.
We previously stated that special circumstances may exist to award fees to amici given fulfillment of certain factors, including incurring costs, fulfilling the role of a party through indispensable advocacy of the interests of the People in a matter rightly of concern to the People, significant contribution, prevailing on the merits, and that an award of fees will facilitate the People’s fundamental right to participate in governmental process to challenge governmental action. Id., p. J7. We add that the following factors must also be present in finding special circumstances. Amicus briefs must be grounded in sound argument, be non-duplicative and contribute something new in terms of both legal and non-legal information that a Court may use to support its rulings, and must not be merely lobbying documents. When these factors are fulfilled, amicus briefs perform a valuable subsidiary role by channeling the Court’s attention to the wider interests implicated by a case.
Mr. Arthur added significant information on social history of the Navajo People and the evolution of the Navajo Nation government not presented by the parties. Mr. Arthur’s contribution was indisputably consequential, given that this Court cited to the brief in our First Opinion. In addition, Mr. Arthur presented oral argument expressing his points and focused the Court’s attention on the People’s concern over the integrity of their government. On these bases and those previously stated, we find that all factors are satisfied in the case of Mr. Arthur.
As we instructed in our First Opinion, Appellants may petition this Court for a hearing if there is an issue with Mr. Arthur’s submitted invoice. Mr. Arthur submitted his invoice on June 4, 2010 and Appellants filed their Objections to Mr. Arthur’s Claim for Legal Expenses and *87 Request for Hearing on June 28, 2010. A hearing on that matter will be scheduled shortly.

Appellees’ Attorneys Fees

Appellees’ request for attorneys fees in connection with the preparation of their response to Appellants’ Petition for Reconsideration is premised on the frivolousness of Appellants’ Petition. While we agree with Appellees that Appellants’ Petition largely repeats arguments previously disposed of or otherwise miseharacterizes the record and the Court’s First Opinion, Appellants’ concern over the status of amendments made by the Council subsequent to CD-68-89 has merit. Therefore, Appel-lees’ request for fees is DENIED.

CONCLUSION

The Petition for Reconsideration filed on June 17, 2010 by Appellants is DENIED. The Opinion of May 28, 2010 as corrected on June 2, 2010 is supplemented as indicated herein.