OPINION

This case concerns whether the Navajo Nation Labor Commission (Commission) may allow an employee of a corporation, who is not licensed by the Navajo Nation Bar Association to practice law within the Navajo Nation, to represent that corporation “pro se” in a Navajo Preference in Employment Act (NPEA) proceeding. The Court rules it cannot, and therefore issues a permanent writ of superintend ling control.
*783 I
The relevant facts are as follows, Melinda Perry (Perry) filed a complaint with the Commission alleging Utah Navajo Development Council (UNDC) terminated her without just cause in violation of the NPEA. UNDC is a corporation organized under Utah law.[1] The complaint named the respondent as “Utah Navajo Development Council by and through its agents/ employees to wit: Melvina Shaggy, Asst. Director, Even Start Prgm., Rebecca Be-nally, Director, Even Start Program.” Director Rebecca Benally (Benally) filed an answer to the complaint. The caption of her answer lists the respondent as “Utah Navajo Development Council.” Perry filed a motion to strike the answer, alleging Benally was not a member of the Navajo Nation Bar Association, and therefore was not licensed to practice law. Perry alleged Benally’s filing of the answer was the practice of law, in violation of provisions of the Navajo Nation Code, 7 N.N.C. § 606; 17 N.N.C. § 377 (2005). The Commission denied the motion, concluding that Rule 15(E) of its procedural rules governing NPEA proceedings allowed any party to appear pro se, and Benally, as an employee of the corporation, was properly appearing pro se on behalf of UNDC.
Perry filed a petition for a writ of supervisory control, requesting that this Court restrain the Commission from allowing Be-nally to represent UNDC. The Court issued an alternative writ of superintending control,[2] and requested the Commission and UNDC to file responses to the petition. The Commission, but not UNDC, filed a response. Perry then informed the Court that she had settled the underlying employment dispute with UNDC, but still wanted to pursue the issue of pro se representation of a corporation. The Court requested further briefing by the parties, specifically on what effect, if any, Dine bi beenahaz’ámvii might have on the ease. The Court held oral argument at Harvard Law School on April 12, 2006.
II
The issues in the case are (1) whether a party lacks standing to petition for a writ to prevent the alleged unauthorized practice of law by a representative of the opposing party, (2) whether settlement of an underlying case after the Court issues an alternative writ renders the writ petition moot, (3) whether the Court has jurisdiction to issue a writ against an administrative tribunal when it issues an alternative writ and the underlying case is subsequently settled, and (4) whether an employee who is not licensed to practice law by the Navajo Nation Bar Association may represent a corporation “pro se.”
III
The Commission presents several threshold legal issues it argues require the *784 Court to dismiss the writ petition.[3] The Commission asserts Perry lacks standing to bring the issue to the Court, that the settlement of Perry’s underlying NPEA claim renders the petition moot, and that the Court lacks authority to issue the writ against the Commission. The Court disposes of each issue in turn.
A
The Commission asserts that Perry lacks standing to file a petition for a writ in this case, as she allegedly has not been harmed by Benally’s appearance before the Commission. This Court limits what cases Navajo courts can hear, and has articulated such restrictions in terms of the Bilagáana concept of “justiciability.” See, e.g., In re Mental Health Services for Bizardi, No. SC-CV-55-02, at 3-4, 5 Am. Tribal Law 467, 469 (Nav.Sup.Ct. November 9, 2004) (mootness); Judy v. White, No. SC-CV-35-02, at 6, 5 Am. Tribal Law 418, 423 (Nav.Sup.Ct. August 2, 2004) (standing); Fulton v. Redhouse, 6 Nav. R. 333, 334 (Nav.Sup.Ct.1991) (same); In re Navajo Bd. of Election Supervisors, 6 Nav. R. 302, 304 (Nav.Sup.Ct.1990) (bar on advisory opinions). One element of jus-ticiability is “standing,” which, in federal constitutional law, allows only those who have an “injury in fact” to file a suit to seek relief. Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 12, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004). The United States Supreme Court also imposes an additional, non-constitutional restriction on standing (“prudential standing”), described as
the general prohibition on a litigant’s raising another person’s legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiffs complaint fall within the zone of interests protected by the law invoked.
Id. Essentially, if the plaintiff cannot show that he or she has been negatively affected, a federal court can dismiss the action for lack of standing. See id.
The Court does not blindly adopt federal notions of standing, but instead considers what standing means in the Dine context. See Judy, No. SC-CV-35-02, at 7, 5 Am. Tribal Law at 423; cf. Navajo Nation v. Kelly, No. SC-CR-04-05, at 6, 6 Am. Tribal Law 772, 776-77 (Nav.Sup.Ct. July 24, 2006) (when interpreting Navajo Bill of Rights, Court is not bound by interpretations of equivalent rights under federal Bill of Rights). Though the Court has applied standing in several cases, it has never adopted one test to define it. The Court instead reviews a litigant’s standing based on the nature of the relief sought. See Judy (Navajo members have standing *785 to seek relief from legislative acts of the Navajo Nation Council); Manygoats v. Atkinson Trading Co, Inc., No. SC-CV-62-00, at 9, 6 Am. Tribal Law 761 (Nav.Sup. Ct. August 12, 2003) (non-Navajo corporation laeks standing to assert equal protection interests of hypothetical non-Navajos); Fulton (Navajo member lacks standing to contest election); Owens v. Sloan, 7 Nav. R. 215, 216-17 (Nav.Sup.Ct.1996) (individual lacks standing to assert Nation’s sovereign immunity).
The Commission appears to advocate a definition of standing similar to the constitutional limitations on federal courts, as it alleges Perry is not connected to any “harm” caused by the alleged unauthorized practice of law. The Commission articulates this concept in Navajo as “doo hb-déét’i’ da," which it describes in English as stating that Perry “is not sufficiently connected to the alleged issue in this matter, and, therefore, has no right to complain about it or seek redress.” Respondent’s Supplemental Brief and Motion to Dismiss at 13.
In the context of this case, the Court holds that litigants and counsel have standing to prevent violations of rules of legal practice. While Perry herself may not have been directly “harmed” by Benal-l/s representation of UNDC, she, and all parties before the courts and tribunals of the Nation, have an interest in preserving the integrity of our legal system. As expressed by the Navajo Nation Council through the provision of civil and criminal sanctions, the unauthorized practice of law undermines the integrity of our legal system. See 7 N.N.C. § 606; 17 N.N.C. § 377 (2005). Further, though the Commission focuses on Perry’s standing, her counsel has an independent interest in this case. Members of the Navajo Nation Bar Association, like Perry’s counsel and the counsel who advise and represent the Commission, are officers of the court, and have a special responsibility to ensure the integrity of the Navajo legal system. That responsibility includes bringing to the attention of the court or tribunal the potential violation of a rule of legal practice, whether or not he or she is directly “harmed” by the violation. Focus only on “harm” or “sufficient connection” in the maintenance of the integrity of the Dine legal system would prevent the remedy of many violations, as, in the absence of the court or tribunal itself noticing and remedying such violations, parties may violate rules with impunity. As all participants in the Dine legal system have an interest in preserving its integrity, a party or counsel has standing to seek compliance with the rules of legal practice. Perry and her counsel therefore have standing to bring this petition.
B
The Commission also argues that the pro se representation issue is moot, as Perry settled her underlying employment dispute with UNDC and the Commission dismissed the case. According to the Commission, there is no further dispute, as the parties are no longer in disharmony, requiring the Court to dismiss this action. The Court previously has recognized and applied the concept of mootness, interpreting it in the context of the Navajo principle of k’é. See Bizardi, No. SC-CV-55-02, at 3-4, 5 Am. Tribal Law at 468-69. Mootness is consistent with the purpose of our judicial system, to assist parties in “talking things out” under k’é to bring them into hozho. Id. If there is no longer a dispute between parties, further litigation does not serve that purpose, and courts and tribunals should avoid deciding theoretical legal questions by dismissing the case. See id.
*786 Though the underlying dispute between Perry and UNDC became moot upon dismissal, there is a separate, continuing dispute that requires closure. Though the issue of corporate representation initially came before the Court within the context of Perry’s then-pending claim against UNDC, the Court’s issuance of an alternative writ created a second dispute independent of the merits of Perry’s employment complaint. Once the Court accepted jurisdiction, and requested a response brief from the Commission, the issue of whether the Commission may allow pro se representation of a corporation transcended the ultimate outcome between Perry and UNDC. Even if there is no underlying case to proceed after the disposition of the writ, the apparent intention of the Commission to continue to allow such pro se representation, as reflected by its order in this case, means the ultimate issue of the need to maintain the integrity of the Dine legal system is not moot between this Court and the Commission. Once an alternative writ is issued, the Commission may not evade review of the issue merely because it subsequently approved the settlement of the underlying claim.
C
Finally, the Commission argues that the Court lacks jurisdiction to issue a writ against it once a case is settled, because the writ is not necessary to protect the Court’s appellate jurisdiction. The provision empowering this Court to issue writs against administrative tribunals, 7 N.N.C. S 303(A) (2005), only allows this Court to issue writs when there is a need to preserve and protect the Court’s appellate jurisdiction. See Budget and Finance Committee v. Navajo Office of Hearings and Appeals, No. SC-CV--63-05, at 5, 6 Am. Tribal Law 717, 720-21 (Nav.Sup.Ct. January 4, 2006); Chuska Energy Co. v. Navajo Tax Comm’n, 5 Nav. R. 98, 102 (Nav.Sup.Ct.1986). The Commission asserts that the settlement of the underlying dispute and the lack of an appeal mean that there is no appellate jurisdiction to preserve and protect, and therefore there is no jurisdiction to issue the writ.
Jurisdiction over the writ attached when the Court issued the alternative writ, and the Court did not lose jurisdiction when Perry subsequently settled the underlying case. As previously discussed in relation to mootness, the present dispute is distinct from the underlying employment case. Jurisdiction over this action was complete when the Court accepted the petition and issued an alternative writ, before Perry settled her dispute with UNDC. At the time of the issuance of the alternative writ, the settlement did not preclude an appeal to this Court, and therefore issuance of the alternative writ was within the Court’s authority to preserve and protect its appellate jurisdiction. Further, once attained, the Court did not lose its jurisdiction by Perry and UNDC’s settlement of the ancillary employment dispute.
IV
The merits of the writ petition turn on the interaction of 7 N.N.C. § 606, 17 N.N.C. § 377 and Rule 15(E) of the rules of the Commission. Through the Title 7 provision, the Council guides the Judicial Branch in maintaining the integrity of the Dine legal system by restricting who may appear before Navajo Nation courts and tribunals to members of the Navajo Nation Bar Association or those “duly associated” with Bar Association members. 7 N.N.C. § 606(B) (2005). Section 606 addresses pro se representation in the criminal context, stating that a criminal defendant can present his or her defense without an attorney. 7 N.N.C. § 606(A) (2005). The *787 Council went further in Navajo Criminal Code (Criminal Code), by making it a crime for an unauthorized “person” to practice law within the Navajo Nation, defined as, among other things, a “person” representing another “person” before a Navajo administrative body. Id. As an unlicensed person must represent another person to be guilty of the offense, the Criminal Code does not criminalize or prohibit pro se representation. Rule 15(E) of the Commission’s Rules states that “[a]ny party shall have the right to appear pro se or be represented by counsel who is a member in good standing of the Navajo Nation Bar Association.”
As Title 7 does not address pro se representation in civil cases, the Court focuses on the interaction of the Criminal Code and the Commission’s rules. Perry argues that the Criminal Code prohibits representation of a corporation by one of its employees who is not licensed by the Navajo Bar Association, and the Commission’s rules cannot allow the violation of that provision. Specifically, Perry argues, in essence, a corporation is not a “person” under the Criminal Code, as it is not a human being. The Commission argues the term “any pai'ty” in its rules includes corporations, and therefore corporations may appear pro se through one of its officers or employees. The Commission also argues that the Criminal Code does not prohibit such representation, as a corporation is a “person” under the Code and may represent itself through one of its employees, just as any human “person” can represent himself or herself without an attorney.
121 If the Criminal Code prohibits corporate pro se representation, the Commission cannot allow it under its rules. Though the Labor Commission is authorized to create rules to govern its proceedings, 15 N.N.C. § 616 (2005), its rules cannot violate provisions of the Navajo Preference in Employment Act. See Taylor v. Dilcon Community School, No. SC-CV-73-04, at 6-7, 6 Am. Tribal Law 688, 691-92 (Nav.Sup.Ct. October 7, 2005). Similarly, the Commission may not, through its rules, allow parties or their representatives to violate other statutes, particularly prohibitions in the Criminal Code. Cf. Fort Defiance Housing Corp. v. Allen, No. SC-CV-01-03, at 4, 5 Am. Tribal Law 408, 410-11 (Nav. Sup.Ct. June 7, 2004) (Court may not promulgate rules inconsistent with statute).
Though the parties frame the issue in terms of whether a corporation is a “person,” this is not the real question. As discussed, the Criminal Code prohibits a “person” who is not licensed by the Navajo Nation Bar Association from representing another “person” before any tribunal. Therefore, the key question is not whether UNDO is a “person,” but it whether it is a separate “person” from its employees, such that a non-licensed employee cannot represent UNDC before the Commission without violating the Code. Assuming that a corporation is a “person” under the unauthorized practice of law provision, see 17 N.N.C. § 209(R) (2005) (defining “person” in the Criminal Code as including a corporation “where relevant”), an employee may still not represent it without a license if he or she is a separate “person” under that provision.
The Navajo Nation Council adopted the concept of corporations from Bilagáana law. Like other jurisdictions, the Navajo Nation provides the opportunity to incorporate, that is, to create a legal entity called a corporation. See 5 N.N.C. §§ 3100 et seq. (2005) The concept that there could be non-natural business entities separate and apart from the human beings who established and operate it was not accepted or practiced in Navajo traditional thinking. This is probably because *788 of the general Navajo principle that a human being is responsible and held accountable for his actions and conduct. However, because of the practicalities of modern life, the Navajo Nation Council saw the need to adopt the concept. The Council adopted the Corporation Code, and corporations are now part of Dine law. The Council explicitly based the Corporation Code on several outside model codes, and explicitly authorizes the Court to consider “general decisional law” interpreting such outside codes as guidance. 5 N.N.C. § 3100 (2005). The Court therefore may consider outside thinking in its analysis. See also Goldtooth v. Naa Tsis’ Aan Community School, No. SC-CV-14-04, at 6-7, 6 Am. Tribal Law 667, 670-71 (Nav.Sup. Ct. July 18, 2005); Navajo Nation v. Rodriguez, No. SC-CR-03-04, at 8, 5 Am. Tribal Law 473, 478-79 (Nav.Sup.Ct. December 16, 2004).
The decision to incorporate renders a corporate entity a separate “person” from its officers and staff for purposes of the unauthorized practice of law. One primary motivation to incorporate is to separate the personal liability of officers, staff, and shareholders from that of the corporate entity, so that when the entity is sued for actions taken by those natural persons, the judgment is satisfied by the corporation’s funds. See generally 18B Am.Jur.2d §§ 42; 43; 1829 (1985). The act of incorporation creates an artificial entity distinct before the law from the natural persons who own or operate it. 18B Am.Jur.2d § 42. The Navajo Corporation Code has adopted these concepts. See 5 N.N.C. § 3116(C) (shareholders of for-profit corporation are presumed not to be liable except under circumstances where “corporate veil” may be pierced under “general decisional law”); 3213 (investor in close corporation not liable for corporate debts, obligations or liabilities); 3305(B) (same for members of non-profit corporation). While the resulting corporation is treated as a “person” for various purposes, the Court holds it has a separate legal existence from its officers and staff and is therefore a separate “person” for purposes of the prohibition against the unauthorized practice of law. The choice to incorporate carries benefits but also, importantly, consequences. Among the consequences of incorporation is the inability of its agents to represent the corporate entity “pro se.”
As UNDC is a separate “person” from Benally, she could not represent it before the Commission without violating the Code. Therefore, it is appropriate to issue the permanent writ in this case.
y
Based on the above, the Court issues a permanent writ of superintending control prohibiting the Commission from allowing corporate officers or employees who are not licensed by the Navajo Bar Association to represent corporations in NPEA proceedings.

. The Commission asserts that UNDC is not, in fact, currently an incorporated entity, as the Navajo Nation Commerce Department revoked its corporate status under Navajo law : in 1996, and UNDC let its corporate status under Utah law expire in 2003, The Court takes judicial notice that UNDC’s corporate status under Utah law has been reinstated, as it appears as an incorporated entity in good standing on the Utah Department of Commerce's web site.

. Though Perry requested a writ of ‘‘supervisory control'' the Court changed the name of the writ to one of "superintending control,” to make it consistent with the Court’s current usage. See In re A.P., No. SC-CV-02-05, at 3, 6 Am. Tribal Law 660, 662 (Nav.Sup.Ct. May 26, 2005).

. The Commission asserts two factual issues the Court can dispose of easily. First, the Commission asserts that UNDC is not a corporation, and therefore the question of whether a corporation may be represented pro se is not presented in this case. As previously discussed, see infra, n. 1, UNDC is a corporation in good standing under Utah law. It is then a corporation for purposes of this case. Second, the Commission alleges that Benally filed the answer on her own behalf as a named respondent to Perry’s complaint before the Commission, and therefore, apparently, not on behalf of UNDC. This is incorrect. The complaint only lists Benally as an agent of the corporate respondent, not as a separate, individual respondent. Further, the caption in Benally’s answer includes only UNDC as the respondent, indicating that Be-nally knew that UNDC was indeed the only respondent. Further, the Commission’s assertion before this Court is inconsistent with its own finding in its order denying Perry's motion to strike Benally’s answer, where it stated that Benally “clearly indicated on the Answer that she was filing pro se, and that she was filing on behalf of the Utah Navajo Development Council.” Order at 1.