OPINION

This matter comes before the Court following an Order to Show Cause hearing held this day. On October 18, 2010, the Court sua sponte issued an Order and, Writ of Prohibition against Frank Seanez, Chief Legislative Counsel in which the Court ordered Mr. Seanez to immediately desist and refrain from giving legal advice and issuing opinions and memoranda that defy orders of the Navajo Nation courts and to appear at the above hearing to show cause why this Court should not take disciplinary action against him for his con *332 duct as set forth in that Order. A copy of the Order is attached herein.
Mr. Seanez appeared and filed his response pro se. Upon review of the response and Mr. Seanez’ testimony, the Court issued a verbal opinion and now issues its written decision.
I.
The Supreme Court shall have the power to issue any writs or orders “necessary and proper” to the complete exercise of its jurisdiction. 7 N.N.C. § 303(A). Additionally, the Supreme Court has the exclusive regulatory authority in the regulation of the practice of law within the Navajo Nation. See Eriacho v. Ramah Dist. Ct., 8 Nav. R. 598, 5 Am. Tribal Law 469 (Nav.Sup.Ct.2004); Navajo Nation v. MacDonald, 6 Nav. R. 222 (Nav. Sup.Ct.1990); Boos v. Yazzie, 6 Nav. R. 211 (Nav.Sup.Ct.1990); In re Practice of Law by Avalos, 6 Nav. R. 191 (Nav.Sup.Ct. 1990); In re Practice of Law in the Courts of the Navajo Nation, 4 Nav. R. 75 (Nav. Ct.App.1983); In re Battles, 3 Nav. R. 92 (Nav.Ct.App.1982). Ordinarily, the NNBA, pursuant to delegated power, will usually review complaints against bar members. In re Bowman, 6 Nav. R. 101 (Nav.Sup.Ct.1989) citing In re Practice of Law in the Courts of the Navajo Nation, 4 Nav. R. 75 (Nav.Sup.Ct.1983). However, if gross misconduct occurs in proceedings before this Court, or when the bar member participates in a scheme to interfere with the operation or proceeding of any court of the Navajo Nation, this Court has the authority to immediately discipline the attorney, without deferring to the NNBA. See In re Bowman, 6 Nav. R. 101 (Nav. Sup.Ct.1989).
Pursuant to Council Resolution No. CD-94-85, resolved clause 9 “Tribal sovereignty requires strong and independent tribal courts to enforce and apply the law.” In addition, this Court has inherent authority to regulate court processes and conduct of attorneys.
Admission to practice law before the Courts of the Navajo Nation is a privilege not a right. In re Admission of Wilson, 4 Nav. R. 137 (Nav.Ct.App.1983); Boos v. Yazzie, 6 Nav. R. 211 (Nav.Sup.Ct. 1990) (an individual does not have an absolute right to practice law within Navajo jurisdiction). Members of the NNBA are officers of the court and have a special responsibility to ensure the integrity of the Navajo legal system. Perry v. Navajo Nation Labor Commission, No. SC-CV-50-05, 6 Am. Tribal Law 780 (Nav.Sup.Ct. August 7, 2006).
II.
It is rare for the Court, sua sponte, to initiate disciplinary actions against members of the Navajo Nation Bar. We have only initiated such proceedings once before, in In re Bowman, supra. We understand the gravity of such proceedings to the individual and also to the Navajo people, who depend on appropriate legal advice from members of the Navajo Nation Bar. In this case, as Mr. Seanez himself pointed out in his testimony and in his response, we have a member of the Navajo Nation Bar serving as the Chief Legislative Counsel to the Navajo Nation Council, advises and works with our leaders, our Council Delegates, our nataanis, and advises our government on the passage or interpretation of laws affecting the people and other branches of government. Due to recent amendments enacted by the Navajo Nation Council, the legal advice of the Chief Legislative Counsel to our government through legal opinions has the legal effect of absolving any member of the government from liability for conduct taken in reasonable reliance upon the advice given *333 in such an opinion. Response, p. 2 citing Resolution CF-12-10 amending the enabling legislation for the Office of Legislative Counsel (February 23, 2010). Accordingly, the matter of Mr. Seanez’s exercise of his legal duties is of overwhelming significance to the Navajo people.
A fundamental duty of legal advis-ors who are Navajo Nation Bar members and also government lawyers is to inform their clients what the law is, not merely restate the law as what they wish it should be. Here, the laws in question are holdings of this Supreme Court. Pursuant to 7 N.N.C. § 206, a government lawyer for the Navajo Nation has a fiduciary duty not to obstruct, interfere or influence the functions of our courts. Such a provision is not in our statutes for show. It shows how vital it is that the government is accountable to all the laws of the Navajo Nation— statutes, court rulings, rules and regulations.
In legal opinions and memoranda that he issued as Chief Legislative Counsel to the Council, Mr. Seanez intentionally and knowingly advised the Council to act contrary to what he, a government practitioner of his experience, knows or ought to know to be law. He informed the Council that our holdings should not be followed, and presented his own arguments as the law that the Council must follow. Specifically, he dismissed our unambiguous holding that the People have ultimate authority to determine their governmental structure and amend all provisions that concern doctrines of separation of powers, checks and balances, accountability to the people, and sendee of the anti-corruption principle. Shirley v. Morgan, No. SC.CV-02-10, p. 25, 9 Am. Tribal Law 46, 76 (Nav.Sup.Ct. May 28, 2010) clarified in Shirley v. Morgan, supra, 9 Am. Tribal Law 78, 85 (Nav. Sup.Ct. July 16, 2010). In the face of our unambiguous holding, he persisted in advising the Council that they have “unquestioned” authority to amend Titles 2, 7 and 11 without restriction. This legal opinion of Mr. Seanez alone constitutes gross misconduct of a Navajo Nation Bar member.
In addition, in a legal memorandum to the Council, Mr. Seanez advised that the Court had no authority to invalidate the Navajo Government Development Act of 2007 and call for the reestablishment and re-funding of the Government Reform Commission. In his testimony, Mr. Sean-ez attempted to point out parts of his legal memorandum where he did agree with the Court, as if these small pieces of agreement nullified the entirety of his opinion in which the authority of this Court was denied. When asked, Mr. Seanez denied knowledge as to whether his legal advice facilitated the Speaker of the Navajo Nation Council’s subsequent instructions that the Commission neither be permitted to meet or be funded. However, the Speaker’s reliance on Mr. Seanez’ legal advice to justify non-compliance with our holding is plain from the Speaker’s memorandum itself.
Mr. Seanez pointed out that there is a difference between his legal opinions and memoranda. He stated that he had only issued four opinions thus far with the rest of his advice in memoranda. It bears repeating here that according to CJA-06-10, the Council is free to defy our holdings with impunity so long as they rely on the Chief Legislative Counsel’s opinions. Ultimately, Mr. Seanez admitted that whether in a legal opinion or memorandum, his legal advice was intended to be taken by the Council.
In his testimony, Mr, Seanez was given the opportunity to take responsibility for the Council’s reliance on either his opinions or memoranda in proposing legislation in defiance of this Court’s holdings, but did not do so. He claimed attorney-client *334 privilege when asked if he ever advised his client about ways in which the branches may communicate according to the Diñé fundamental principle of k’é, which we have described in our holdings as vital in the way our leaders are to approach each other. In his testimony he attempted to make a claim that the Court was unclear in our holdings. However, his assertion of the Council’s supremacy in amending Titles 2, 7 and 11 regarded holdings which we clarified in a second opinion at the Council’s request, therefore his claim that the law is unclear is meritless.
People as individuals will always have differing opinions regarding the application of various court holdings, regulations, policies and statutes. Such differences are a matter of free speech that this Court fully supports. However, we cannot and will not condone a government lawyer intentionally using his position to undermine the very foundation of a stable Navajo Nation government by providing justifications for unlawful conduct. There can be no doubt that Mr. Seanez knew, or should have known, that through his denial of this Court’s authority he was facilitating the breaking of Navajo Nation laws.
III.
For the foregoing reasons, we deem the conduct of Mr. Seanez that was described in the Order and Writ of Prohibition of October 18, 2010 as gross misconduct, unbecoming of an Officer of the Navajo Nation Court and member of the Navajo Nation Bar. Furthermore, this conduct amounts to interference with the functions of this Court in violation of 7 N.N.C. § 206.
It is the order of this Court that Mr. Frank Seanez is permanently disbarred from the Navajo Nation Bar Association effective this date. The Navajo Nation Bar Association is directed to notify the members of the Bar, the district courts, and administrative agencies of this Court’s decision.

ORDER AND WRIT OF PROHIBITION

Before YAZZIE, Chief Justice, and SHIRLEY, Associate Justice.[1]
THE NAVAJO NATION SUPREME COURT TO FRANK SEANEZ:
The Navajo Nation Supreme Court sua sponte issues this Order and Writ of Prohibition[2] to you, as Chief Legislative Counsel of the Navajo Nation Council, a member of the Navajo Nation Bar Association (NNBA), a government lawyer and an Officer of the Court, as follows:
I.
The Court is aware that you have issued opinions as Chief Legislative Counsel, pursuant to your responsibilities under the Office of Legislative Counsel Amendments of 2010, that defy the opinions of this Court. Specifically, on September 10, 2010, in your legal opinion No. CLC04-10, you advised the Navajo Nation Council that “It is unquestionable that the Navajo *335 Nation Council itself has the authority to amend Titles 2, 7 and 11 of the Navajo Nation Code.” This advice is in defiance of our opinion in Shirley v. Morgan, No. SC-CV-02-10 (Nav.Sup.Ct. May 28, 2010) in which we stated that Title II and other provisions impacting the structure of government through principles of separation of powers, checks and balances, and service of the anti-corruption principle, among others, may only be amended by the People. Your legal advice runs counter to Navajo Nation law and is in violation of 7 N.N.C. § 206 which imposes upon you, as a government lawyer, a duty not to obstruct interfere or otherwise influence the functions of the Navajo Nation Courts.
II.
On August 4, 2010, you issued a legal memorandum advising the Speaker of the Navajo Nation Council that the Court in its July 16, 2010 Opinion and Order on Reconsideration, Shirley v. Morgan, No. SC-CV-02-10, exceeded its jurisdiction in a number of holdings, even though the holdings are now settled law, with the time period for reconsideration having passed and no motion for reconsideration having been filed or raised by the party Council. You advised the Navajo Nation Council that it is legal to defy our holdings, and the result was in fact defiance by the Office of the Speaker in its August 4, 2010 memorandum to Office of Navajo Government Development staff. Your legal advice runs counter to Navajo Nation law and is in violation of 7 N.N.C. § 206 which imposes upon you, as a government lawyer, a duty not to obstruct interfere or otherwise influence the functions of the Navajo Nation Courts.
Contents of concern in the Memorandum, Frank M. Seanez to Lawrence T. Morgan, August J, 2010 are underlined below:
“This memorandum follows the distribution to the Navajo Nation Council of the Opinion and Order on Reconsideration issued on July 16, 2010 by the Navajo Nation Supreme Court. As noted within the cover memorandum, the Court has purported to invalidate the following additional provisions of Navajo Nation statutory law ... 1) Navajo Nation Council Resolution CO-37-07; and 2) 2 N.N.C. § 102(B); and 3) 11 N.N.C. § 401(A) and (B); and 4) 11 N.N.C. § 240(C).” Id. at 1.
As to Resolution CO-37-07, restoration of the Commission: “The Court has taken for itself the authority to restore the Commission and Office. The Court has no such authority within the powers delegated to it by the Navajo Nation Council.” Id. at 2.
“Accordingly, it appears that the Navajo Nation Supreme Court exceeded its authority in purporting to restore the Commission and Office./] As such, the Court exceeded its jurisdiction, as set forth at 7 N.N.C. § 302.” Id. at 3. “It appears that by purporting to take a legislative action in the restoration of the Commission and Office, the Navajo Nation Supreme Court has exceeded its limited jurisdiction, as delegated by the Navajo Nation Council.” Id. at 3 “According to the extent that the July 16, 2010 Order purports to immediately restore the Commission, the Order was issued by the Navajo Nation Supreme Court in excess of its limited jurisdiction. The Commission was not restored by the Order. Nor was a new Commission endowed with new authorities, lines of oversight, or funding created by the Order. To the extent that the Council now wishes to recreate the Commission, it may do so through normal legislative process. Likewise, the Court’s Order to restore the Office and Navajo Govern *336 ment Development to its configuration prior to the passage of Resolution CO-37-07 is outside the limited jurisdiction of the Navajo Nation Supreme Court.” Id at 4.
As to Resolution CO-37-07, funding of the Commission and Office: “The Court held that the Commission and Office “shall be funded at their original funding levels or at sufficient levels to fulfill their duties and responsibilities, whichever is greater.” The Court’s Order relative to the funding of the Commission and Office further exceeds the limited jurisdiction of the Navajo Nation Supreme Court. While the original funding level of the Commission and Office can be determined by reference to the budget resolutions passed by the Navajo Nation Council, the Court has no jurisdiction to appropriate funds, or to require the reallocation of funds with any branch of the Navajo Nation Government to fund a non-existent Commission. Further, the Court lacks jurisdiction to determine the level at which the Office must be funded in order to ‘fulfill its duties and responsibilities.’ ” Id. at 4. “Accordingly, the Navajo Nation Supreme Court has no jurisdiction to make an appropriation of Navajo Nation funds for creation of the Commission.” Id. at 4.
“Accordingly, the Navajo Nation Supreme Court has no jurisdiction to make a supplemental appropriation of Navajo Nation funds for additional funding of the Office.” Id. at 5.
As to 2 N.N.C. § 102(B): “The Navajo Nation Supreme Court stated in its Order that “2 N.N.C. § 102(B) relating to powers reserved to the Council is invalid under principles of egalitarianism, and the reserved, fundamental and inherent right of the People to make laws and determine their form of government as previously elucidated by this Court.” Shirley at 11. This is the sole statement of the Court with regards to its purported invalidation of 2 N.N.C. § 102(B).” Id. at 5.
“Accordingly, it appears that the Navajo Nation Supreme Court exceeded its authority in purporting to invalidate 2 N.N.C. § 102(B).[] As such, the Court exceeded its jurisdiction, as set forth at 7 N.N.C. § 302.” Id. at 6.
As to 11 N.N.C. § 401(A) and (B): “ ‘The Navajo Nation Supreme Court stated in its Order that, ’ll N.N.C. § 401(A) and (B) relating to referendum/initiative matters in which yearly appropriations for a fiscal year budget, laws determined by the Council to be emergencies, use of trust funds, issuance of bonds, acquisition of property, granting of public utility franchises, rate regulations, tax measures and zoning, among others, are exempted from the referendum/initiative process are invalid as they purport to remove matters of intrinsic public concern from public vote.’ This is the sole statement of the Court with regards to its purported invalidation of 11 N.N.C. § 401(A) and (B).” Id. at 6.
“Accordingly, it appears that the Navajo Nation Supreme Court exceeded its authority in purporting to restore the Commission and Office.[] As such the Court exceeded its jurisdiction, as set forth at 7 N.N.C. § 302.” Id. at 6. “In conclusion, the legal advice of the Office of Legislative Counsel is that the Navajo Nation Supreme Court exceeded its jurisdiction in a number of its holdings in the Order issued on June 16, 2010.” Id. at 7.
III.
Upon information and belief, you continue to advise the Navajo Nation Council *337 that they may legally defy our holdings notwithstanding that the judgments of this Court are final, and holdings of this Court are the settled law of the Navajo Nation pursuant to Navajo Nation Council Resolution No. CD-94-85, Enacting the Judicial Reform Act of 1985, Whereas Clause 13 and 7 N.N.C. § 302.
[[Image here]]
The Supreme Court shall have the power to issue any writs or orders “necessary and proper” to the complete exercise of its jurisdiction. 7 N.N.C. § 303(A). Additionally, the Supreme Court has the exclusive regulatory authority in the regulation of the practice of law within the Navajo Nation. See Eriacho v. Raman Dist. Ct., 8 Nav. R. 598, 5 Am. Tribal Law 469 (Nav.Sup.Ct.2004); Navajo Nation v. MacDonald, 6 Nav. R. 222 (Nav.Sup.Ct. 1990); Boos v. Yazzie, 6 Nav. R. 211 (Nav. Sup.Ct.1990); In re Practice of Law by Avalos, 6 Nav. R. 191 (Nav.Sup.Ct.1990); Matter of Practice of Law in the Courts of the Navajo Nation, 4 Nav. R. 75 (Nav.Ct. App.1983); Matter of Practice of Law in the Courts of the Navajo Nation, 4 Nav. R. 75 (Nav.Ct.App.1983); Matter of Battles, 3 Nav. R. 92 (Nav.Ct.App.1982). Ordinarily, the NNBA, pursuant to delegated power, will usually review complaints against bar members. In re Bowman, 6 Nav. R. 101 (Nav.Sup.Ct.1989) citing In re Practice of Law in Navajo Courts, 4 Nav. R. 75 (Nav. Sup.Ct.1983). However, if gross misconduct occurs in proceedings before this Court, or when the bar member participates in a scheme to interfere with the operation or proceeding of any court of the Navajo Nation, this Court has the authority to immediately discipline the attorney, without deferring to the NNBA. See Matter of Bowman, 6 Nav. R. 101 (Nav.Sup.Ct. 1989).
Pursuant to Council Resolution No. CD-94-85, resolved clause 9 “Tribal sovereignty requires strong and independent tribal courts to enforce and apply the law.” In addition, this Court has inherent authority to regulate court processes and conduct of attorneys.
Admission to practice law before the Courts of the Navajo Nation is a privilege not a right. In re Admission of Wilson, 4 Nav. R. 137 (Nav.Ct.App.1983); Boos v. Yazzie, 6 Nav. R. 211 (Nav.Sup.Ct.1990) (an individual does not have an absolute right to practice law within Navajo jurisdiction). Members of the NNBA are officers of the court and have a special responsibility to ensure the integrity of the Navajo legal system. Perry v. Navajo Nation Labor Commission, No. SC-CV-50-05, 6 Am. Tribal Law 780 (Nav.Sup.Ct. August 7, 2006).
Accordingly,
You are, therefore, commanded, immediately, to desist and refrain from giving legal advice and issuing opinions and memorandums that contravene, disclaim, refute, or defy this Court’s or any other court of the Navajo Nation’s judgment or order.
It is further ordered that you show cause before the Navajo Nation Supreme Court at 9:00 A.M., October 22, 2010, at the Navajo Nation Labor Commission Hearing Room, in Window Rock why this Court should not take disciplinary action against you for your conduct as set forth herein.

OPINION AND ORDER ON RECONSIDERATION

Before YAZZIE, Chief Justice, and SHIRLEY, Associate Justice.[1]
*338 This matter comes before the Court following the timely filing of a Petition for Reconsideration on November 12, 2010 by Respondent, Mr. Seanez. Mr. Seanez asks that the Court reduce the sanction of disbarment, refer the matter to the Navajo Nation Bar Association’s Disciplinary Committee, or for what the Court deems just and proper.
Legal arguments aside, Mr. Seanez urges the Court to take into account his 19 years of loyal service and the effect of disbarment on his Navajo family and legal community. He further urges this Court to “take this opportunity to bring the Nation together after the struggles that have plagued the Navajo Nation over the past two years, and restore the harmony so badly needed at this time.”
We must note that Mr. Seanez only very briefly mentioned his family, and almost as an aside during his hearing, and failed to introduce his wife. Additionally, since our decisions of May 28, 2010 affirming the primacy of the People and reduction of the Council, the Navajo Nation Council has maintained prolonged non-engagement with the other branches while pursuing new laws that restrict or eliminate the core functions and personnel of the branches. We also note that Mr. Seanez fails to offer any words of personal commitment towards healing and takes no responsibility as the Chief Legislative Counsel (CLC) for any role in our present governmental strife. Mr. Seanez does not acknowledge his role in the full extent of damage that is being done to our tribal government, nor offer apologies. We emphasize that Navajos will not require apologies that are not freely given. However, we affirm that Mr. Seanez’s selective and erroneous legal advice to the Council has caused grave harms to the whole Navajo Nation government that have not abated.
For reasons set forth in this opinion, we are unwavering in our finding that Mr. Seanez’s actions constituted gross misconduct necessitating serious sanction and furthermore, violated 7 N.N.C. § 206. However, upon reconsideration, the Court feels that his permanent disbarment serves no healing purpose when one arm of government views this disbarment as akin to banishment for political reasons of one of its own members, in this case, a hadane. Instead, it deepens the destructive governmental divide. Additionally, this Court assumes that Mr. Seanez’s family wishes him to practice within the Navajo community rather than permanently pursue his state-licensed profession in non-Navajo communities away from his family. Recognizing that this Court has very limited ability to bring the Nation together under the above circumstances, this Court will play its part in diminishing the chaos that has been going on long enough. Inharmonious words have been exchanged and actions performed, but this Court will do what it can in an effort to turn such things into positive dew or corn pollen.
Applying the principle of baa hojoo bá’í yee’ for Mr. Seanez’s family and unilaterally playing what role we can in intra-gov-ernmental healing, this Court will grant Mr. Seanez’s petition for reconsideration solely on the bases of compassion and restoration. However, our finding of gross misconduct remains intact, and this requires accountability. Therefore, Mr. Seanez’s disbarment shall be converted to suspension with strict conditions as set forth at the conclusion of this opinion.
*339 i.
Jurisdictional bases, previously set forth in our October 22, 2010 opinion in this matter, are incorporated herein by reference.
Several legal arguments have been put forward in this petition, which will be dealt with in the sections below.
II.
DUE PROCESS
Mr. Seanez asserts that he had insufficient time to prepare and was not told that disbarment was a possible disciplinary sanction. We note that Mr. Seanez had made no objections on these bases either during the hearing or in his 14-page written response. As we further explain infra, Mr. Seanez’s actions had direct bearing on the enforcement authority of this Court and necessitated our swift response, therefore was similar to direct contemptuous behavior requiring the immediate issuance of a contempt order. Furthermore, he had specifically asked the Court not to disbar him during his presentation, showing that he was fully aware of the range of possible sanctions for the conduct being defended. Therefore, we reject this argument.
Mr. Seanez also asserts that his actions are insufficient in quantity to qualify as gross misconduct. We note that there is no requirement that gross misconduct result from cumulative behavior, nor are there Navajo Nation regulations defining gross misconduct. Additionally, the existing regulations in the various state and federal bars do not contain defined categories of gross misconduct. Courts sitting in judgment over bar disciplinary matters generally approach the issue on a case-by-ease basis, determining whether behavior is deserving of serious punishment based on the standard of duty and the harm resulting from the failure of that duty. We have found gross misconduct here and confirm our finding.
Mr. Seanez next asks that this matter should properly be referred to the Navajo Nation Bar Association Disciplinary Committee for preliminary action. We decline to do so. This Court is the ultimate authority over the legal profession on the Navajo Nation.[2] We may initiate a disciplinary proceeding when conduct of a bar member directly confronts the authority of Navajo Nation Courts, here the enforcement of court orders intended to give full faith to promises made by the Council to the Navajo People regarding the People as the source of government power and the character of sound government. See In re Bowman, 6 Nav. R. 101 (Nav.Sup.Ct. 1989). We note that intentionally disobeying or disregarding court orders, as in this case, amounts to contemptuous behavior that brings the authority and administration of justice itself into disrespect. See, e.g., Ex parte Stone v. Reddix-Smalls, 295 S.C. 514, 516, 369 S.E.2d 840 (1980). For the above reasons, these proceedings are properly initiated by the Court.
Mr. Seanez quotes from Tuba City District Court v. Sloan as follows (in excerpt): “It is not acceptable for one medicine person to tell another how to conduct a ceremony ... when a medicine man or woman oversteps his or her authority and does not perform a ceremony properly, that ceremony is ruined irreparably.” Tuba City, 8 Nav. R. 159, 167, 3 Am. Tribal Law 508, 511 (Nav.Sup.Ct.2001). Mr. Seanez clearly asks this Court to interpret Tuba City as *340 limiting our ability to govern the legal practice of a lawyer working for a separate governmental branch. He also implies that, if this Court exercises its authority, it will do irreparable damage. We do not adopt this interpretation, as this would leave government lawyers without effective oversight by the very body invested with ultimate authority over the legal profession.
Even so, Tuba City does bear on this case.
When applied in the comprehensive spirit evolved over generations rather than fragmentarily used, as is customarily done with the very specific rules and provisions of Anglo laws, Diñé bi beenahaz’áanii leads to fundamental fairness for the whole. Episodes from our journey narratives teach broad lessons that should be subtly applied to individualized matters that impact our People today. The lessons will have layered ramifications for our communities, and such lessons should not be argued to serve purely individual purposes. Navajos understand that there are lessons for each subtle situation which teach communally beneficial behavior.
As applied to our government, the example used by the Court in Tuba City teaches noninterference with properly conducted governmental activity when there are no errors, omissions, or wrongfulness. This is in keeping with the doctrine of separation of functions. We note that when lapses do occur in a ceremony, participants will address the matter through performance of specific remedial measures, such as sin-dááhaazt'i’, for the shortcomings of human beings; thus, there is no irreparable destruction of the ceremony. The Court’s language in Tuba City is not to be interpreted to encompass situations for which it was not intended.
III.
MERITORIOUS CONTENTION
Finally, Mr. Seanez asserts that the legal advice as he has provided to his client is protected as “meritorious contentions” under the Navajo Nation Rules of Professional Conduct and does not constitute violation of 7 N.N.C. § 206. We disagree for reasons set forth below.
Mr. Seanez cites opinions of the United States Supreme Court in Roe v. Wade, Brown v. Board of Education, U.S. v. Montana, and Nevada v. Hicks which have given rise to ongoing debates in the federal arena over abortion, school desegregation, and the extent of tribal jurisdiction over non-members. We find that Mr. Seanez’s cites to the above ongoing federal debates are not well taken. While debates regarding the above opinions do continue and take place in a wide range of forums and media, these opinions cited by Mr. Seanez remain indisputably the ultimate law of the land. If such debate is contained in a formal legal opinion issued by the top lawyer of a coordinate branch, it is unthinkable that the lawyer’s opinion not also acknowledge that, notwithstanding the debate, the Supreme Court opinions are the law and must be followed. In this case, there is no acknowledgement of the authority of our opinions in Shirley v. Morgan, infra, in either Mr. Seanez’s Opinion No. CLC-04-10 (September 13, 2010) and his August 4, 2010 Memorandum to the Speaker. Mr. Seanez’s legal advice having been issued extra-judieially with no appeal sought, this Court had no opportunity to respond.
We have interpreted the promises of the Council in the Title 2 Amendments of 1989 to mean that the Council has binded its own hands and deferred to the People to make further changes to government, particularly in regard to important doctrines *341 of sound government—separation of powers, checks and balances, accountability to the People, and service of the anticorruption principle. Shirley v. Morgan, 9 Am. Tribal Law 46 (Nav.Sup.Ct.2010) (Shirley 1) and 9 Am. Tribal Law 78 (Nav.Sup.Ct. 2010) (Shirley 2). The Council has since made clear its opposition to these opinions and made clear that they continue to acknowledge themselves, and not the People, are the source of governmental power. Mr. Seanez supports the preference of the Council in his legal advice. In his August 4, 2010 memorandum, he asserts that the Court lacked authority and exceeded its jurisdiction to reach its finding because the Court lacked authority to address issues not previously raised in a lower tribunal. He stated that as courts of “limited jurisdiction” we may only address issues permitted by the Council. In CLC-04-10 subsequently issued in September, Mr. Seanez concluded that the Council has “unquestioned” authority to amend Titles 2, 7 and 11, unless the Council itself chooses to surrender that right. CLC-04-10 operates to immunize Council members from liability for actions taken in reliance on Mr. Seanez’s conclusion. Since its issuance, the Council has persisted in proposing amendments to Navajo statutes and policies that impact the above doctrines notwithstanding our court orders. The atmosphere of strife between the branches continues.
Mr. Seanez relies on 7 N.N.C. § 803 in concluding that the Navajo Nation Supreme Court may not address new issues. Section 803 states, “Appeals shall be limited to the issues of law raised in the record on appeal.” However, this Court has long read this provision as constraining issues that may be raised by parties in an appeal, but not constraining whatsoever issues the Court may further address at its discretion.[3] Where we have described ourselves as a court of “limited jurisdiction,” the reference is made either in reference to administrative law matters or statutory requirements that a case appealed be fully adjudicated on the merits with the entry of the final decision in the lower tribunal. Chuska Energy Co. v. The Navajo Tax Comm’n et al, 5 Nav. R. 98, 99 (1986). “Limited jurisdiction” in no way applies to our original jurisdiction over extraordinary writs or the authority of this court to address all issues necessary in cases before us in order to achieve substantial justice. Our interpretation is in keeping with Section 851 which requires Title 7 to be “so construed as to effectuate its general purposes and in such a manner as to assure judicial independence, the right of access to fair and independent remedies, the observance of Diñé bi beenahaz’áanii, and the protection of the rights guaranteed by the Navajo Nation Bill of Rights.”
In Shirley 1, supra, we told an episode from our Emergence describing the hero journeys of four potential leaders, each returning with different gifts for their community, and each finally accepted as mutual leaders by a community at first adamant on selecting a single leader and that leader’s gifts over the others. Id. at 21-23, 9 Am. Tribal Law at 63-64. We also told of the timeless need for a disciplinarian, a role presently represented by the courts. Id. at 25, 9 Am. Tribal Law at 65-66. Diñé bi beenahaz’áanii teaches that human beings, who have always been imperfect, need that disciplinarian and cannot realistically be expected to set the parameters for their own discipline. In the same way, our authority to address *342 ancillary issues necessary to achieve substantial justice cannot simply be a matter of narrow statutory construction. This concept is mirrored in the Anglo world where governmental entities must be given independent external oversight due to the inherent conflict of interest in asking any fiduciary body to police itself. The concept is well in keeping with the doctrine of separation of functions exemplified by the above episode.
The lengthy record of the exercise of our power to address new issues is readily accessible to practitioners. Recently, we provided a summary of this record in Nelson v. Initiative Committee to Reduce Navajo Nation Council, 9 Am. Tribal Law 204, 207-212 (Nav.Sup.Ct. 2010). We emphasize that unlike the federal courts, the Navajo Nation Courts are not constrained by the “cases and controversies” clause in the U.S. Constitution and there is no corresponding constraint in our own statutes. See In re Mental Health Services for Bizardi 8 Nav. R. 593, 5 Am. Tribal Law 467 (Nav.Sup.Ct.2004). We have, instead, exercised self-constraint in issuing advisory opinions in which the parties lack any tangible interest. APS v. ONLR, 6 Nav. R. 246 (Nav.Sup.Ct.1990). Following the Council’s acknowledgement of Diñé bi beenahaz’áanii in 2002, we began permitting issues based on fundamental law to be addressed for the first time on appeal. Judy v. White, 8 Nav. R. 510, 5 Am. Tribal Law 418 (Nav.Sup.Ct.2004). We later formulated the comprehensiveness test for the inelusion of new substantive issues. Shirley 1, supra. In Shirley 1, the parties were coordinate branches of the Navajo Nation in which new issues involving the interpretation of government doctrines were addressed in order to reach finality for the parties.
As the lengthy record of our decisions show, alternative readings have been made by Navajo Nation courts over many decades in which new issues pertaining to the interests of the parties have been included sua sponte in appellate cases. In denying the ability of this Court to address issues not raised by the parties, Mr. Seanez substituted his staunch personal reading of Section 803 as law without reference to other possible interpretations At the very least, Mr. Seanez was not thorough in his research into alternative interpretations of this provision.
Without doubt, Mr. Seanez’ advice justified the Council’s defiance of our orders, and operated to provide immunity for that defiance to his client Council members. The enforcement of our orders is an essential function of this Court, covered under 7 N.N.C. § 206. Therefore, we affirm our finding that Mr. Seanez has violated Section 206. In addition, we declare that Opinion No. CLC-04-10 and Mr. Seanez’ August 4, 2010 memorandum are incorrect as to the extent of our jurisdiction, may not be relied on and may not absolve government actors from liability in reliance upon them.
IV.
THE GOVERNMENT LAWYER
Mr. Seanez’s assertions fail to comprehend the distinction between private lawyers engaged in zealous advocacy in an adversarial proceeding, and government lawyers issuing opinions without the balance of an adversary, and whose opinions are essentially advance pardons for government action.
The government lawyer[4] has a duty “to exercise independent professional judgment and render candid advice” under *343 Rule 2.1 of the Navajo Nation Rules of Professional Conduct. We note that the Federal Bar Association has taken the position that while the client is the agency where the lawyer is employed, the government attorney has a duty to the public trust.[5] Such a duty is consistent with our opinion in Shirley 1, supra, which noted that the Navajo Nation government is accountable to the People because the Council, in Whereas Clause 8 to the Title 2 Amendments of 1989, recognized the People as the source of governmental power. Id. At 25. The government lawyer must be independent, candid and neutral rather than partisan in order that the public trust is protected. For those like the Chief Legislative Counsel, whose formal opinions indemnify government action, the adoption of the adversarial approach accepted in litigation would be improper in every respect because of the duty to the public trust. Because the CLC and AG are in positions to issue binding opinions to branch players, it is imperative that their opinions be clear, accurate, thoroughly researched, soundly reasoned, and primarily in service of the public trust. Therefore, the government lawyer is not just an ad-visor but a gatekeeper as well.
In a government arena where entities frequently disagree on policy, it is the responsibility of government lawyers to focus on the public trust when rendering advice. This duty distinguishes the work of a government lawyer from legal advice given to private clients. While the private practitioner zealously advocates for his client, the government lawyer advocates for the public trust and is constrained by the public trust from wholesale support of any governmental client’s pursuit of desired policies. The advocacy model of law-yering, in which lawyers might craft merely plausible legal arguments to support their clients’ desired actions, inadequately promotes the obligation to the public trust. See, e.g., Principles to Guide the Office of Legal Counsel, U.S. Department of Justice, December 21, 2004, at 1. Government lawyers should take their client’s goals into account and “assist their accomplishments within the law” without seeking “simply to legitimate the policy preferences of the administration of which it is a part.” Id. at 5.
The obligation to comply with the entirety of our laws apply with special force in instances where advice is unlikely to be subject to review by this Court, and where such advice bestows on government officials what is effectively an advance pardon, as in formal legal opinions issued by the CLC or Attorney General. We note that the federal courts have frequently observed that government has an overriding obligation to see that justice is done, and that such an overriding obligation imposes an expectation of even greater candor on government counsel than attorneys representing private parties. See, e.g., Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1814 (1935). Guidance with respect to the special priorities of a government lawyer is further provided by the Harvard Law Review Association in Conflicts of Interest and Government Attorneys, 94 Harv. L.Rev. 1413 (1981), which continues to influence government ethics today. Otherwise, the legal standards, including the rules of professional responsibility that apply to all Navajo Nation practitioners, also apply to government lawyers.
A lawyer working for the People is a leader who should be further guided as follows:
Diñé bá nijigháao, bá naat’áanii jíljjgo éí bá dóó bií nidajilnishígíí Diñé bibeena- *344 haz’áanii bee bieh’j’ yájflti’ dóó bee na-zhnitin dooleel; azhqshj} doo yídínéel-náada ndi, áko Diñé binant’a’í dóó bá bee agha’diit’aahii jíljjgo ei Diñé t’áá náhwiist’áánt’éé bibeenahaz’áanii hol niljjgo baan tsíjíkees dooleei.
As a representative of the People, a leader for the People, and also for those you work with, you must advise and teaeh them of the laws of the Diñé, even though they might not agree with the law; therefore, to be a leader and lawyer for the People, one must use and respect the laws of all the People.
Government lawyers in upper level positions such as the CLC who are directly engaged in governmental policymaking must deal daily with political pressures from his or her client in a setting where institutional opinions, unlike mere legal advice, serve as get-out-of-jail free cards for government action. There will be many times when policymakers will bear on their lawyers to arrive at results that support their positions, to exclude from the results laws or provisions conflicting with the policymaker’s positions, or otherwise to come forward with reasons to justify defiance of those laws. Such political pressures do not relieve government lawyers of their duty “to exercise independent professional judgment and render candid advice” under Rule 2.1 of the Navajo Nation Rules of Professional Conduct. We note also that the ABA Committee on Ethics and Professional Responsibility has written, in Formal Op. 85-352 (1985) that “in the role of advisor, the lawyer should counsel the client as to whether the position is likely to be sustained by a court if challenged.” This ABA opinion dovetails with 7 N.N.C. § 206 which requires that government cooperate with the courts and do not obstruct, interfere with, control, or influence court functions. Omitting likely issues to be faced in court, including the consequences of defiance of court orders, opens the door to unnecessary conflict and bears on the respect of the justice system as a whole, particularly when binding advice is issued extra-judicially through the assistance of government lawyers. Under all circumstances, it is the heightened duty of the government lawyer to be independent, candid, neutral rather than partisan because of their duty to the public trust, and most of all thorough in their analysis.
We note collaterally two recent instances, involving Mr. Seanez, in which lack of thoroughness in formal legal opinions helped create or prolong situations of in-tra-governmental conflict. We refer to these instances here in order to emphasize the need for thoroughness in the work of government lawyers, especially the work of the CLC, whose work product is not checked by anyone prior to issuance as formal opinions. The two situations set forth below have played no part in this Court’s determinations in this case and are included here as cautionary illustrations.
The first instance concerns recent upheavals at Diñé College. 10 N.N.C. § 2003(A) prohibits government officials from interrupting the day-to-day activities of the Board of Regents of Diñé College. However, on May 5, 2010, Mr. Seanez issued Opinion No. CLC-02-10 which concluded that the Government Services Committee of the Navajo Nation Council has near absolute power of removal over members of the Diñé College Board of Regents without accountability, even when exercise of the removal power effectively disables the board. Mr. Seanez’s opinion entirely failed to reference Section 2003(A) above. See Ferlin Clark v. Diné College, SC-CV-25-10, 9 Am. Tribal Law 348, at 354 (Nav. Sup.Ct. October 27, 2010). The harms flowing from this situation are evident to the Navajo People, with unrest at the Col *345 lege continuing to the present day and with a new generation of students apparently convinced that strong arm methods as used by the Council are proper, rather than our traditional methods of talking things out.
The second instance concerns the process required for measures to be referred to the public for approval. Mr. Seanez issued Opinion No. CLC-04-10 which caused the law of referendum measures suddenly to appear unsettled following many years of settled practice of the Council that such measures must first be reviewed by the President. On November 1, 2010, Mr. Seanez’s opinion was effectively overruled by the Window Rock District Court on the basis that our statutory laws, read comprehensively, clearly require the President’s review. Office of the Navajo Nation President and Vice-President v. Navajo Nation Council and NBEA, WR-CV-304-2010 (W.R.Dist.Ct. November 1, 2010). Reliance on Mr. Seanez’s opinion caused public confusion, undue and great expense, and more intra-governmental litigation.
V.
CONCLUSION
As we have stated earlier, Mr. Seanez’s Petition for Reconsideration is GRANTED by application of the principle of baa hojoo bá'í yee’ solely on the bases of compassion and restoration. By so doing, this Court is looking ahead in the long-term to protect the integrity and mutual cooperative workings of the three branches. Our finding of gross misconduct remains intact, as is our finding that 7 N.N.C. § 206 was violated. For these lapses, a level of accountability is necessary. Furthermore, a length of time in suspension is necessary in order to protect the public trust. The slate cannot simply be wiped clean.
As this situation shows, there is a need for our practitioners to be taught the ethics and responsibilities of government lawyers in the public trust. This has been an unmet need thus far.
Accordingly, IT IS ORDERED that the record shall permanently reflect that Respondent Frank Seanez was effectively disbarred between October 22, 2010 through November 24, 2010, and said disbarment was lifted this day for reasons of compassion and restoration.
It is FURTHER ORDERED that Respondent’s license to practice law in the Navajo Nation shall be suspended for a minimum period of forty-nine (49) months effective the date of this Order. Respondent may apply to this Court for reinstatement of his bar license upon completion of the suspension term and upon fulfillment of the following conditions:
A. In consultation with an Associate Justice, Chief Legislative Counsel, and Attorney General, Respondent shall have developed a course for Navajo Nation Bar Members, including syllabus and course materials, on the ethical standards and special responsibilities of Navajo Nation government lawyers consistent with this opinion; and
B. Said course and syllabus has been approved for use in a mandatory annual course for government lawyers, after any necessary revisions, by the Navajo Nation Bar Association (NNBA) Training Committee and this Court; and
c. The NNBA Disciplinary Committee has submitted a recommendation for Respondent’s reinstatement.
It is FURTHER ORDERED that upon reinstatement, Respondent shall teach said course in good faith to practitioners for no less than three (3) consecutive years. *346 Such teaching duties may count towards his annual bar membership requirement for pro bono service.
It is FURTHER ORDERED that upon reinstatement, Respondent may be employed only in capacities where he is not called upon to issue formal legal opinions.
The Navajo Nation Bar Association is directed to notify the members of the Bar, the district courts, and administrative agencies of this Court’s decision.

. The Court is not restricted in issuing a two-justice opinion where ‘‘necessary and proper” as long as the Chief Justice or his or her designate presides in the case. Benally v. Mobil Oil Corp., 8 Nav. R. 365, 368 (Nav.Sup. Ct.2003).

. In accordance with In re Bowman, 6 Nav. R. 101, 101 (Nav.Sup.Ct.1989), this matter is raised sua sponte. The Court in Bowman addressed the gross misconduct of a member of the Navajo Nation Bar Association sua sponte under its disciplinary powers over bar members and issued a writ of prohibition sua sponte ... upon information and belief” that Bowman "may attempt” to act contrary to Navajo law.

. The Court is not restricted in issuing a two-justice opinion where "necessary and proper” *338 as long as the Chief Justice or his or her designate presides in the case. Benally v. Mobil Oil Corp., 8 Nav. R. 365, 368 (Nav.Sup. Ct.2003).

. Preamble: A Lawyer’s Responsibilities in the ABA Model Rules of Professional Conduct, adopted with exceptions by the Navajo Nation Supreme Court on May 17, 1993 (version adopted by the House of Delegates of the American Bar Association on August 2, 1984).

. We note here that administrative law appellate matters are further governed by other provisions in the Navajo Nation Code.

. “Government lawyer” as used herein also includes government advocates.

. Federal Bar Ass’n Professional Ethics Commission, Opinions, No. 73-1 at 72 (1973)